T.C. Memo. 2009-208

UNITED STATES TAX COURT

DOROTHY JEAN SIMMONS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 18647-06, 18654-06.    Filed September 15, 2009.

<u>Robert J. Onda</u> and <u>Timothy S. Rankin</u>, for petitioner.

<u>Michael A. Raiken</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined the following income tax deficiencies and additions to tax with respect to petitioner in these consolidated cases:

|  |  | Additions to Tax | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2003 | $84,739.60 | $19,066.41 | $10,168.75 | $2,217.64 |
| 2004 | 67,752.00 | 15,244.20 | 4,065.12 | 1,966.63 |

After concessions,[1] the issue for decision is whether petitioner is entitled to charitable contribution deductions with respect to conservation easements petitioner granted to L'Enfant Trust, Inc. (L'Enfant).  For the reasons stated herein, we find that petitioner is entitled to charitable contribution deductions of $56,250 for 2003 and $42,250 for 2004.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioner resided in Washington, District of Columbia, at the time she filed her petition in this case.  Petitioner was a real estate agent during 2003 and 2004, operating under the real estate brokerage firm of Coldwell Banker.

_____

[1]The parties settled before trial a number of unrelated issues in the notice of deficiency.  That settlement will be taken into account in the parties' Rule 155 computations.  The parties further agree that additions to tax under secs. 6651(a)(1) and (2) and 6654 are applicable to any resulting deficiency.

Petitioner owned two improved properties in Washington, D.C., during the years at issue. The first was at 17 Logan Circle (the Logan Circle parcel). The second was at 1503 Vermont Avenue (the Vermont Avenue parcel). Both were rowhouses subject to the Historic Landmark and Historic Preservation Act of 1978 during the years at issue.

L'Enfant is a District of Columbia nonprofit corporation chartered in 1978. L'Enfant is a section 501(c)(3) corporation organized for the tax purpose of holding and enforcing conservation easements on historic designated properties in Washington, D.C. L'Enfant currently holds about 1,100 easements.

After an easement is donated to L'Enfant, it is recorded with the District of Columbia. L'Enfant requires all donors to affix a bronze plaque to the donated facade. The plaque serves to inform local citizens that the facade will be preserved, and L'Enfant often receives calls or tips from local citizens about any construction or alterations to the facades of historic buildings bearing the L'Enfant plaque. L'Enfant also actively inspects buildings on which it holds easements. This is often done during the winter when L'Enfant inspectors can take detailed photographs of the donated facades. L'Enfant uses these photos to build a database of its easements. The annual photographs are used to verify that there have not been any changes to donated facades. L'Enfant also reviews all building permits received by

the District of Columbia Historic Preservation Office, annually inspects its properties, and takes legal action to enforce its rights under the easements.

Petitioner granted facade easements on both the Logan Circle and Vermont Avenue parcels to L'Enfant. Each facade conservation easement was memorialized by a "Conservation Easement Deed of Gift" (the deed). The deed memorializing the easement at the Logan Circle parcel was made on November 18, 2003. The deed for the Vermont Avenue parcel was made on January 24, 2004. The terms of both easements are essentially identical except for the identification of the underlying properties.

The deeds provided in effect that petitioner could not make any material changes to the respective facades in any way without L'Enfant's consent. There were exceptions, however, if the facades were damaged. Should the facades be damaged, petitioner would have to make any repairs in such a way that they would be consistent with the historical aesthetic that the easements were meant to protect.

The deeds also required that petitioner periodically clean the facades, keep the L'Enfant plaques polished and visible from the street, and maintain the properties in good condition. The deeds also provided that any work done on the properties, whether L'Enfant consented or not, was required to comply with all

applicable Federal, State, and local government laws and regulations.

The deeds also provided that should petitioner sell the subject properties, the easements would remain in force. Lastly, the deeds provided that should the easements be extinguished through condemnation or judicial decree, L'Enfant would be entitled to a portion of any proceeds petitioner received on account of such extinguishment.

Petitioner hired appraisers to determine the values of the conservation easements. The appraisals were done by James Donnelly (Mr. Donnelly) of J. Lee Donnelly & Son, Inc. (Donnelly & Son). Mr. Donnelly is a licensed and certified appraiser for the Appraisal Institute and has appraised residential properties for more than 30 years.

Mr. Donnelly valued the Logan Circle parcel at $1,250,000, and the Vermont Avenue parcel at $845,000. The appraisal for the Logan Circle parcel valued the contribution as of November 12, 2003, while the appraisal for the Vermont Street address valued the contribution as of January 26, 2004. Mr. Donnelly valued the Logan Circle easement at $162,500 and the Vermont Avenue easement at $93,000.

Petitioner made cash contributions of $8,625 and $4,378 to L'Enfant with the easements.[2]  L'Enfant requires donors of preservation easements to make cash contributions to its endowment fund.  The donations are used to fund L'Enfant's monitoring and enforcement of the donated easements.

Petitioner did not timely file a Federal income tax return for 2003 or 2004.  Respondent prepared substitutes for returns under section 6020(b) on behalf of petitioner for those years.  On June 12, 2006, respondent issued statutory notices of deficiency to petitioner for tax years 2003 and 2004.

On September 15, 2006, petitioner filed petitions in this Court contesting respondent's determinations.  On or about April 15, 2007, petitioner executed a Federal tax return for 2003 and mailed it to the Internal Revenue Service (IRS) service center in Andover, Massachusetts.  Petitioner did the same on or about June 2, 2007, for 2004.  Respondent did not process the returns because this case was pending at the time.

Petitioner claimed a facade conservation easement charitable contribution to L'Enfant of $162,500 on the delinquent 2003 return.  This contribution reflected the claimed value of the conservation easement granted on the Logan Circle parcel. Petitioner also claimed a facade conservation easement charitable

_____

[2]The treatment of these cash contributions was dealt with in the parties' settlement, discussed supra note 1.

contribution to L'Enfant of $93,000 on the delinquent 2004 return. This contribution reflected the claimed value of the conservation easement granted on the Vermont Avenue parcel.

A trial was held on June 25, 2008, in Washington, D.C. The only issue of fact in dispute was the values of the claimed conservation easements. Petitioner produced two fact witnesses, while respondent produced one. Both parties introduced expert reports valuating the contributions.

OPINION

I. Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving, by a preponderance of the evidence, that these determinations are incorrect. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Tax deductions are a matter of legislative grace, and a taxpayer has the burden of proving that he is entitled to the deductions claimed. Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The burden of proof on factual issues that affect a taxpayer's liability for tax may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue." Sec. 7491(a)(1). Petitioner does not claim that the burden shifts to respondent under section 7491(a). In any event,

petitioner has failed to establish that she has satisfied the requirements of section 7491(a)(2). On the record before us, we find that the burden of proof does not shift to respondent under section 7491(a).

Respondent does not argue that petitioner is not entitled to a charitable contribution deduction because she filed delinquent returns. Instead, respondent puts forth the following alternative arguments in support of his contention that petitioner is not entitled for either year to a charitable contribution deduction in any amount:

(1) That the easements granted to L'Enfant are not valid easements for purposes of section 170;

(2) that even if we find the easements valid, petitioner's appraisals are not qualified appraisals;

(3) that petitioner has not met her burden of proof because petitioner's appraisals are not credible.

We will take each argument in turn.

II. <u>Charitable Contribution Deductions in General</u>

Section 170(a)(1) provides that there shall be allowable as a deduction any charitable contribution, payment of which is made within the taxable year. Section 170(a)(1) further provides that a charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the secretary.

Generally, section 170(f)(3) does not permit a deduction for a charitable gift of property consisting of less than the donor's entire interest in that property. Section 170(f)(3)(B)(iii), however, provides an exception to this general rule in the case of a "qualified conservation contribution." Section 170(h)(1) provides that a contribution of real property may constitute a qualified conservation contribution if the real property is a "qualified real property interest," the donee is a qualified organization, and the contribution is "exclusively for conservation purposes." All three requirements must be met for a donation to qualify as a qualified conservation contribution.

Section 170(h)(2)(C) provides that for purposes of section 170(h), the term "qualified real property interest" means "a restriction (granted in perpetuity) on the use which may be made of the real property." A restriction granted in perpetuity on the use of the property must be based upon legally enforceable restrictions that will prevent uses of the retained interest in the property that are inconsistent with the conservation purposes of the contribution. See sec. 1.170A-14(g)(1), Income Tax Regs.

Section 170(h)(4)(A)(iv) provides in pertinent part that for purposes of section 170(h), the term "conservation purpose" means the preservation of an historically important land area or a certified historic structure. Section 1.170A-14(d)(5), Income Tax Regs., provides that when restrictions to preserve a building

within a registered historic district permit future development on the site, a deduction will be allowed under section 170 only if the terms of the restriction require that such development conform with appropriate local, State, or Federal standards for construction or rehabilitation within that historic district. A contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity. See sec. 170(h)(5)(A).

Respondent argues that petitioner is not entitled to deductions because the purpose of the easements does not meet the requirements of section 170(h)(4) and (5)(A). First, respondent argues that no conservation purpose described in section 170(h)(4) has been met because L'Enfant: (1) Can consent to changes in the facades, even if they are contrary to the conservation purposes of the easements and (2) has the right not to exercise any of its obligations under the easements. Second, respondent contends that the requirements of section 1.170A-14(g), Income Tax Regs., have not been met because the restrictions in the easements allow L'Enfant to consent to changes in the facades.

Third, respondent argues that petitioner is not entitled to deductions because the subordination requirements of section 1.170A-14(g)(2), Income Tax Regs., were not satisfied. Respondent contends that these requirements were not met because

the easements were not granted in perpetuity.  As discussed above, the properties at issue were subject to mortgages. Respondent argues that although the mortgage holders of the properties signed acknowledgments of easements, the documents do not expressly identify the easements at issue and do not subordinate the holders' interests to L'Enfant's interests in the properties.  Therefore, respondent argues, the subordination requirements of section 1.170A-14(g)(2), Income Tax Regs., have not been met.

Petitioner disputes respondent's contentions and argues that the easements are valid conservation easements.  Petitioner argues that the facade easements are qualified real property interests, that L'Enfant is a qualified organization, and that the easements were granted exclusively for conservation purposes.

We agree with petitioner that the easements granted to L'Enfant are valid conservation easements.  Although the grants do allow L'Enfant to consent to changes to the properties, the grants require any rehabilitative work or new construction on the facades to comply with the requirements of all applicable Federal, State, and local government laws and regulations. Section 1.170A-14(d)(5), Income Tax Regs., specifically allows a donation to satisfy the conservation purposes test even if future development is allowed, as long as that future development is subject to local, State, and Federal laws and regulations.

Further, the subordination rights of section 1.170A-14(g)(2), Income Tax Regs., have been met. Both deeds contain paragraphs explicitly indicating that the properties were currently securing mortgages to National City Mortgage and Countrywide Home Loans. Those paragraphs provided in pertinent part that the lenders "[subordinate] their rights in the Property to the right of the Grantee, its successors or assigns, to enforce the conservation purposes of this easement in perpetuity".

As discussed above, the Logan Circle parcel was subject to two mortgages while the Vermont Avenue parcel was subject to one mortgage. Both the Logan Circle and Vermont Avenue deeds contained sections titled "Lender Acknowledgments - Conservation Easements" from the banks holding mortgages on both properties. Respondent's contention that the documents did not expressly identify the easements is not persuasive; the deeds included a document titled "Exhibit A", which provided descriptions of the respective parcels.

In sum, the easements were valid conservation easements. Accordingly, we move on to respondent's alternative arguments.

III. Substantiation of Charitable Contributions

The obligation to substantiate a claimed charitable contribution is clear and unambiguous. Smith v. Commissioner, T.C. Memo. 2007-368; Blair v. Commissioner, T.C. Memo. 1988-581.

No deduction is allowed for a contribution in excess of $5,000 unless the taxpayer meets the substantiation requirements of section 1.170A-13(c)(2), Income Tax Regs.  Todd v. Commissioner, 118 T.C. 334, 340 (2002); sec. 1.170A-13(c)(1)(i), Income Tax Regs.  Section 1.170A-13(c)(2)(i), Income Tax Regs., provides that a taxpayer must generally comply with three requirements:

> (A) Obtain a qualified appraisal (as defined in paragraph (c)(3) of this section) for such property contributed.  If the contributed property is a partial interest, the appraisal shall be of the partial interest.

> (B) Attach a fully completed appraisal summary (as defined in paragraph (c)(4) of this section) to the tax return (or, in the case of a donor that is a partnership or S corporation, the information return) on which the deduction for the contribution is first claimed (or reported) by the donor.

> (C) Maintain records containing the information required by paragraph (b)(2)(ii) of this section.

Additionally, section 170(f)(8)(A) provides that a taxpayer must obtain a contemporaneous written acknowledgment from the donee organization for contributions of $250 or more.  Section 170(f)(8)(B) provides that this acknowledgment must include the amount of cash and a description of any property other than cash along with certain information about any goods or services provided by the donee.  Section 170(f)(8)(C) provides that this acknowledgment must be obtained by the earlier of the date the return is filed or its due date.

Section 1.170A-13(c)(3)(i) and (ii), Income Tax Regs., contains the specific requirements that a "qualified appraisal" must meet, as summarized below:

(A) Be made not earlier than 60 days before the date of the contribution nor later than the due date of the return, including extensions, on which a deduction is first claimed or reported;

(B) be prepared, signed, and dated by a qualified appraiser;

(C) contain the name, address, identifying number, and qualifications of the qualified appraiser;

(D) contain a statement that it was prepared for income tax purposes;

(E) contain a description of the property in sufficient detail for a person who is not generally familiar with the type of property to ascertain that the property that was appraised is the property that was contributed;

(F) include the terms of any agreement of understanding entered into or expected to be entered into by or on behalf of the donor or donee that relates to the use, sale, or other disposition of the property, including an agreement that restricts temporarily or permanently a donee's right to dispose of the property;

(G) show the date on which the property was contributed;

(H) show the fair market value of the property on the date of contribution;

(I) show the method of valuation and the specific bases for the valuation; and

(J) show the date on which the appraisal was made.

In Bond v. Commissioner, 100 T.C. 32, 41 (1993), this Court considered whether certain aspects of the above-referenced regulations were mandatory or directory and whether the taxpayer

in that case had substantially complied so as to be entitled to a charitable contribution deduction.[3]  This Court found the requirements to be directory rather than mandatory, id., and found the taxpayers to have substantially complied with the qualified appraisal requirements because substantially all of the information required had been provided, except the qualifications of the appraiser on the Form 8283, Noncash Charitable Contributions, attached to the return.

In Hewitt v. Commissioner, 109 T.C. 258 (1997), affd. without published opinion 166 F.3d 332 (4th Cir. 1998), the taxpayers had claimed a charitable contribution deduction for a donation of shares of stock that was not publicly traded.  The taxpayers, however, had not obtained qualified appraisals before filing their returns for the years at issue.  The IRS disallowed a portion of the deduction because of the lack of a qualified appraisal.  The taxpayers countered that they had substantially complied with the appraisal requirements and attempted to rely on Bond v. Commissioner, supra.  We rejected the taxpayers' argument

---

[3]For charitable contributions made after June 3, 2004, Congress, in the American Jobs Creation Act of 2004, Pub. L. 108-357, sec. 883, 118 Stat. 1631, which added sec. 170(f)(11), specifically codified the substantiation requirements and provided an exception where there is reasonable cause for failure to comply with the substantiation requirements for noncash charitable contributions.  See Smith v. Commissioner, T.C. Memo. 2007-368.  Petitioner granted both easements before June 3, 2004. Accordingly, the reasonable cause exception is not available to petitioner.

because the taxpayers had not provided any of the information required by section 170 and the regulations thereunder.

Taken together, Bond and Hewitt "provide a standard by which we can consider whether [petitioner] provided sufficient information to permit respondent to evaluate * * * [her] reported contributions, as intended by Congress." Smith v. Commissioner, T.C. Memo. 2007-368.

Respondent argues that petitioner is not entitled to a deduction because she failed to comply with the reporting requirements of section 170 and the underlying regulations. As discussed above, section 170(a)(1) provides that a charitable contribution is allowable as a deduction only if verified under regulations prescribed by the Secretary. See also Hewitt v. Commissioner, supra at 261. Section 170(f)(8)(A) provides that a taxpayer must obtain a contemporaneous written acknowledgment from the donee organization for contributions of $250 or more. Section 170(f)(8)(B) provides that this acknowledgment must include the amount of cash and a description of any property other than cash along with certain information about any goods or services provided by the donee. Section 170(f)(8)(C) provides that this acknowledgment must be obtained by the earlier of the date the return is filed or its due date. The deeds themselves satisfy the requirements of section 170(f)(8)(A) and (B), as they are signed by a representative of L'Enfant, are contemporaneous

with the donation of the easements, and describe the properties donated. The deeds were also obtained before petitioner's returns were due.

Respondent argues that the appraisals petitioner relies on are not qualified appraisals as defined in section 1.170A-13(c)(3), Income Tax Regs., because they: (1) Fail to adequately describe the properties contributed; (2) fail to accurately identify the method of valuation used to determine the fair market value of the contributed easements or to adequately describe the specific basis for valuation; (3) do not include a statement that the appraisals were prepared for income tax purposes; and (4) do not provide the dates of the contributions.

Petitioner argues, however, that the appraisals meet the requirements of a qualified appraisal, and that even if the appraisals do not satisfy all of the requirements of a qualified appraisal, petitioner has substantially complied with those requirements.

The appraisals petitioner obtained are qualified appraisals. The appraisals adequately describe the parcels of land owned by petitioner and the structures built thereon. The appraisals also contain lengthy discussions of historic preservation easements in general. In addition, the appraisals contain statistics gathered by L'Enfant and the Capital Preservation Alliance that Mr. Donnelly took into account in preparing the appraisals. The

appraisals likewise identify the method of valuation used and the basis for the valuations reached.

Although the appraisals did not contain an explicit statement that they were prepared for income tax purposes, the appraisals did contain statements that the owner of the parcels (petitioner) was contemplating donating conservation easements to L'Enfant. The appraisals also include discussions of IRS practice and cases of this Court concerning facade easements. The dates of contribution were likewise included on petitioner's tax returns. The Forms 8283 that petitioner included with her returns required an acknowledgment by the donee, L'Enfant. That acknowledgment required the donee to acknowledge the date that the contributed property was received.

Petitioner included all of the required information in the appraisals attached to her returns or on the face of the returns. Accordingly, petitioner has complied with the substantiation requirements of section 170.

IV. Valuation of Conservation Easements

As we have stated previously, no established market exists for determining the fair market value of an easement. See Hilborn v. Commissioner, 85 T.C. 677, 688 (1985). The "before and after" approach has been used on numerous occasions to determine the fair market values of restrictive easements with respect to which charitable contribution deductions are claimed.

See, e.g., Hilborn v. Commissioner, supra; Griffin v. Commissioner, T.C. Memo. 1989-130, affd. 911 F.2d 1124 (5th Cir. 1990); Stotler v. Commissioner, T.C. Memo. 1987-275.

The "before" value of the property generally reflects the highest and best use of the property in its condition just before the donation of the easement. Hilborn v. Commissioner, supra at 689. The highest and best use of the property in its "before" condition takes into account the manner by which the property likely would have been developed absent the easement. The evaluation of that likelihood also takes into account the effect of existing zoning or historic preservation laws that already restrict the property's development regardless of the existence of the restrictive easement.

Respondent argues that petitioner has failed to meet her burden of establishing the fair market values of the contributed properties. As discussed above, petitioner bears the burden of proving her entitlement to deductions.

Respondent argues that petitioner's reliance on the Donnelly & Son appraisals is not sufficient to meet her burden. Respondent argues that the appraisals do not set forth in detail the reasons for their conclusions, do not state the data relied upon by the appraisers, and do not explain the basis for the decision. Respondent further contends that Donnelly & Son did not use reliable principles or methods in determining the value

of the properties donated and does not explain how the easements differ from District of Columbia rules and regulations governing the facades before donation.

Both petitioner and respondent submitted appraisals in support of their valuations. Respondent produced expert reports prepared by Peter A. Wolman (Mr. Wolman), a District of Columbia certified general real estate appraiser. Mr. Wolman is currently an IRS employee and has a degree in business administration from American University. Mr. Wolman has been a real estate appraiser since 1985 and has worked at the IRS since 2007. Respondent also presented testimony by David Maloney (Mr. Maloney), an employee with the District of Columbia Historic Preservation Office. Mr. Maloney is the manager of the District of Columbia's historical preservation program.

Both the Donnelly & Son appraisals and Mr. Wolman's expert reports valued the easements by applying the "before and after" sales test. The parties' reached similar "before" valuations. Petitioner valued the Logan Circle and Vermont Avenue parcels at $1,250,000 and $845,000, respectively. Respondent valued the Logan Circle and Vermont Avenue parcels at $1,175,000 and $860,000, respectively.

The difference in the "before" valuations of the Logan Circle parcel stems mainly from Mr. Donnelly's putting a premium on the Logan Circle parcel's view. The Logan Circle parcel

borders Logan Circle Park.  Because the view from the Logan Circle parcel is of Logan Circle Park, Mr. Donnelly increased his valuation by $50,000 to account for the view.  Respondent's expert reports indicate that Mr. Wolman's decision not to make an upward adjustment in value was based on conversations with real estate agents in the Logan Circle neighborhood to the effect that the view of Logan Circle Park would not affect the value of the Logan Circle parcel.

We find petitioner's "before" valuations to be reasonable and adopt them.  Petitioner's appraisals were completed closer to when the easements were granted.  Further, we found Mr. Donnelly's testimony credible that the Logan Circle parcel's view would be taken into account when determining the fair market value of the property.  Before petitioner granted the easements, the Logan Circle and Vermont Avenue parcels had fair market values of $1,250,000 and $845,000, respectively.

The parties' disagreement concerns how the easements affect the fair market values of the properties.  Petitioner's appraisals apply a 13-percent decline in value to the Logan Circle parcel and an 11-percent decline to the Vermont Avenue parcel.

Respondent's expert reports did not find any change in the fair market value of either property as a result of the granting of the easements.  Mr. Wolman's report came to the conclusion

that the properties' zoning, site, and improvements would not change as a result of the easements because the deeds prevented material alteration of the facades.  Mr. Wolman also determined that the highest and best use of the parcels remained unchanged by the granting of the easements because before petitioner's grants, the parcels were already subject to Washington, D.C., historic preservation laws.  Because the historic preservation laws already prevented any material changes to the facades or improvements on the properties, Mr. Wolman reasoned that the easements were superfluous and did not prevent anything not already covered by District of Columbia preservation laws.

We note, however, that respondent's expert reports also indicate that easements granted to L'Enfant did affect the sale prices of some of the "after" comparable properties.  As discussed above, Mr. Wolman used comparable properties subject to easements granted to L'Enfant to calculate the "after" values of petitioner's properties.  These properties all sold subject to easements.  In researching the sales of one Logan Circle-comparable property and one Vermont Avenue-comparable property, respondent's expert learned that the sellers of those comparable properties had not disclosed the easements to the respective buyers.  After disclosure of the easements, the sellers of the two comparable properties later agreed to credit the respective buyers $10,000 to make up for the nondisclosure of the easements.

After researching the comparable "after" properties, Mr. Wolman contacted the buying and selling agents who had taken part in the sales of those comparables. Mr. Wolman's report indicates that these agents informed him that the easements granted to L'Enfant did not affect the negotiated selling prices of the comparable properties and that the $10,000 credits were simply to expedite the sales closings. Respondent points to this information in his expert reports as evidence that the easements did not affect the fair market values of petitioner's properties. Respondent lastly argues that petitioner is not entitled to any deductions because the easements simply duplicate requirements imposed by District of Columbia rules and regulations. Respondent points to testimony of Mr. Maloney that his office would have to issue permits before any changes could be made to petitioner's buildings' facades.

Petitioner disputes this contention and argues that L'Enfant does in fact impose certain financial obligations on donors that the District of Columbia does not. Petitioner points to testimony by Carol Goldman (Ms. Goldman), president of L'Enfant, for support. Ms. Goldman testified that L'Enfant regulates paint color, which the District of Columbia does not. Ms. Goldman also

testified that the District of Columbia allows certain repairs to covered homes that L'Enfant does not.[4]

Petitioner also focuses on the heightened enforcement of its easements by L'Enfant. Petitioner contends that because the District of Columbia lacks funding to enforce its own rules and regulations and because L'Enfant continually monitors its easements, the L'Enfant easements increase petitioner's burdens even though the restrictions are similar.

We agree with petitioner that the easements granted do affect the fair market values of the subject properties. However, we do not agree with the amounts of the charitable contribution deductions petitioner claimed. While we are inclined generally to accept the more persuasive expert valuation amongst those proffered, we are not required to accept that valuation in its entirety. See Symington v. Commissioner, 87 T.C. 892, 902 (1986); Buffalo Tool & Die Manufacturing Co. v. Commissioner, 74 T.C. 441, 452 (1980). Although we adopt petitioner's "before" valuations, we have considered the expert reports and testimony and find that the easements resulted in

---

[4]Ms. Goldman provided as an example a brick-exterior home for which L'Enfant holds an easement. A common problem with older brick homes is degradation in the exterior. The District of Columbia often allows a homeowner to simply patch the masonry as problems develop. However, too much patching can ultimately lead to a need to paint the house. Ms. Goldman testified that L'Enfant does not allow patching but instead requires the entire home to be "re-tucked", a more expensive process.

only a 5-percent reduction in the values of the subject properties.  This decrease stems from the heightened financial burdens of an eased facade and L'Enfant's affirmative enforcement of its easements.  Because the restrictions imposed by the easements are the same for both the Logan Circle and Vermont Avenue parcels, the subject properties are entitled to the same reductions.

Although respondent argues that the properties were already subject to District of Columbia preservation laws, this does not prevent any charitable contribution deductions.  We have previously allowed charitable contribution deductions even if the property was subject to local preservation laws before the granting of an easement.  See, e.g., Griffin v. Commissioner, T.C. Memo. 1989-130; Nicoladis v. Commissioner, T.C. Memo. 1988-163.  Although the easements were duplicative in some respects, it is important to note that granted easements to L'Enfant meant that petitioner would be subject to a higher level of enforcement than that provided by the District of Columbia.  L'Enfant actively enforces its easements in a way that the District of Columbia does not.  Ms. Goldman credibly testified that in previous situations the District of Columbia had consented to changes to a historic building only to have L'Enfant later intervene and prevent those changes.  L'Enfant could also dictate

what types of supplies and materials had to be used when work was being done on a donated easement.

Even if we were to accept respondent's contention that the easements did not impose any restrictions on petitioner over and above those imposed by the District of Columbia, the easements still added an additional level of approval before any changes could be made to the properties. See Nicoladis v. Commissioner, supra. Petitioner is required to obtain L'Enfant's consent to make any changes to the facades, even if those changes are allowable under District of Columbia preservation laws.

Further, respondent's expert reports acknowledge instances where an easement affected the final sale price of a comparable parcel of real estate. We do not find respondent's expert reports credible insofar as they maintain that an easement would have absolutely no effect on the fair market value of valuable real estate.

As discussed above, we have adopted petitioner's "before" valuations of the Logan Circle and Vermont Avenue parcels of $1,250,000 and $845,000, respectively. Applying a 5-percent reduction in fair market value, we value the easements at $56,250 and $42,250, respectively. Accordingly, petitioner is entitled to charitable contribution deductions of $56,250 for 2003 and $42,250 for 2004.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.